William B. DeClercq, SBN 240538
**TAYLOR ENGLISH DUMA LLP**
1055 West Seventh Street, Suite 3300
Los Angeles, CA 90017
Tel: (626) 408-2150
wdeclercq@taylorenglish.com

Amanda G. Hyland (admitted *pro hac vice*)
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA  30339
Telephone: (770) 434-6868
Facsimile: (770) 434-7376
ahyland@taylorenglish.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENDER SOFTWARE PTY LTD., FORESTCOIN PTE, LTD. and FORESTCOIN, LTD.<br><br>Plaintiffs,<br><br>v.<br><br>FORESTCOIN, INC.; and CHRISTOPHER CHARLES SANDERS,<br>Defendants. | Case No.:  2:21-cv-02169-JVS-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS FORESTCOIN, INC.; and CHRISTOPHER CHARLES SANDERS**<br><br>Judge:  Hon. James V. Selna<br>Date:    September 13, 2021<br>Time:  1:30 p.m.<br>Courtroom:  Santa Ana, Courtroom 10C |

# **TABLE OF CONTENTS**

I. INTRODUCTION ..............................................................................................1

II. RELEVANT FACTS AND PROCEDURAL HISTORY .........................2

III. PLAINTIFFS ARE ENTITLED TO DEFAULT JUDGMENT ................3

IV. DEFAULT JUDGMENT IS PROCEDURALLY PROPER ....................5

   A. Plaintiffs Will Suffer Prejudice Absent a Default Judgment ......................5

   B. Plaintiffs' Infringement, Unfair Competition, and Cyberpiracy Claims are Meritorious and Sufficiently Pled in the Complaint .............................6

     1. Plaintiffs Own a Legally Protectable Mark, Where Defendants' Use of Which is Likely to Cause Consumer Confusion ..........................................7

     2. Plaintiffs' Unfair Competition Claims .....................................................10

     3. Plaintiffs' Cyberpiracy Claims ................................................................11

   C. Plaintiffs Should not be Denied the Damages They would Recover from Defendants at Trial ..............................................................................12

   D. There is Little Possibility of a Dispute Concerning Material Facts or Excusable Neglect ....................................................................................13

   E. Although Public Policy Favors a Decision on the Merits, Defendants Make a Decision on the Merits Impossible ................................................13

V. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF .................14

VI. PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES  FOR TRADEMARK INFRINGEMENT .........................................................16

VII. PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES  FOR VIOLATING THE ANTI-CYBERSQUATTING  PROTECTION ACT.19

VIII. PLAINTIFFS ARE ENTITLED TO ITS COSTS, DAMAGES,  AND REASONABLE ATTORNEYS' FEES .......................................................20

IX. CONCLUSION ..........................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Aldabe v. Aldabe*,
    616 F.2d 1089 (9th Cir. 1980)...............................................................................5

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979).................................................................................8

*Aztec Shops Ltd. v. State St Grill SDSU Inc.*,
    2014 U.S. Dist. LEXIS 192048 (S.D. Cal. 2014) ..............................................17

*Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005).....................11

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994)..................................................................................7

*Craigslist, Inc. v. RealWorks*,
    No. 08-5072, 2009 U.S. Dist. Lexis 132432 (N.D. Cal. Oct. 29,
    2009)......................................................................................................................14

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008)................................................................................20

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .............................................................................................14

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986)............................................................................4, 5

*Elektra Entm't Group Inc. v. Crawford*,
    226 F.R.D. 388 (CD. Cal. 2005) .........................................................................14

*Farmers Ins. Exch. v. Superior Court*,
    2 Cal. 4th 377 (1992)............................................................................................10

*Fitness Together Franchise Corp. v. C.P. Body Design, Inc.*,
    2010 U.S. Dist. LEXIS 163059, 2010 WL 11628010 (D. Ariz.
    2010).......................................................................................................................9

*Ford Motor Co. v. Cross*,
    441 F. Supp. 2d 837 (E.D. Mich. 2006)..............................................................19

*Geddes v. United Fin. Grp.*,
    559 F.2d 557 (9th Cir. 1977)............................................................................7, 13

*GoTo.Com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000)..............................................................................10

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013)................................................................12

*Hopson v. Singh*,
    2019 U.S. Dist. LEXIS 155319, 2019 WL 4298040 (E.D. Cal.
    2019)........................................................................................................5

*Lahoti v. VeriCheck, Inc.*,
    586 F.3d 1190 (9th Cir. 2009)................................................................19

*Network Automation, Inc. v. Advanced Sys. Concepts*,
    638 F.3d 1137 (9th Cir. 2011)..................................................................7

*Nexon Am., Inc. v. Kumar*,
    No. 11-6991, 2012 U.S. Dist. Lexis 47294 (C.D. Cal. Apr. 3, 2012)................4

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
    488 B.R. 109 (C.D. Cal. 2012)................................................................19

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal 2002).....................................................6

*Philip Morris USA, Inc. v Castauorrld Prods., Inc.*,
    219 F.R.D. 494 (C.D. Cal. 2003) .......................................................6, 15

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
    219 F.R.D. 494 (C.D. Cal. 2003) ...........................................................17

*Pye v. Mitchell*,
    574 F.2d 476 (9th Cir. 1978)..................................................................17

*Riggs Marketing Inc. v. Mitchell*,
    993 F. Supp. 1301 (D. Nev. 1997) ...........................................................9

*RingCentral, Inc. v. Quimby*,
    711 F. Supp. 2d 1048 (N.D. Cal. 2010)...................................................17

*Sennheiser Electronic Corp v. Eichler*,
    No. 12-10809, 2013 U.S. Dist. Lexis 105319 (C.D. Cal. 2013) ..............13

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)................................................................10

*St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*,
    573 F.3d 1186 (11th Cir. 2009)..............................................................19

*Swaim v. Moltan Co.*,
  73 F.3d 711 (7th Cir. 1996) ..................................................................................3

*TeleVideo Sys., Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. 1987) ................................................................................4

*Ticor Title Ins. Co. v. Florida*,
  937 F.2d 447 (9th Cir. 1991) ................................................................................6

*Truong Giang Corp. v. Twinstar Tea Corp.*,
  No. 06-3594, 2007 U.S. Dist. Lexis 100237 (N.D. Cal. Mar. 22,
  2007) .....................................................................................................................7

*United States v. Uptergrove*,
  No. 1:06-CV-1630-AWI-GSA, 2008 U.S. Dist. LEXIS 73489, 2008
  WL 3850833 (E.D. Cal. Aug. 13, 2008) ...............................................................3

**STATUTES**

15 U.S.C. § 1116(a) ...............................................................................................14

15 U.S.C. § 1117(a) ...........................................................................................16, 20

15 U.S.C. § 1117(b) ..........................................................................................16, 20

15 U.S.C. § 1117(c) ................................................................................................17

15 U.S.C. § 1125(d)(1) ...........................................................................................20

15 U.S.C. § 1125(d)(1)(B)(ii) .................................................................................11

15 U.S.C. §§ 1114(1), 1125(a), 1125(d) ..................................................................7

50 U.S.C. § 3931 ......................................................................................................4

CAL. BUS. PROF. CODE § 17200 ........................................................................10

Id. § 1117(c)(2) .......................................................................................................17

**RULES**

Fed. R. Civ. P. 54(c) ...............................................................................................14

Fed. R. Civ. P. 55 .....................................................................................................3

Fed. R. Civ. P. 55(a)-(b) ..........................................................................................4

Fed. R. Civ. P. 8(b)(6) ..........................................................................................4, 6

Local Rule 55(b)(2) ...................................................................................................4

Local Rule 55-1 ........................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

By this Application and based on the allegations of its well-pled Complaint, ForestCoin Pte. Ltd., ("Forestcoin SGP"), Forestcoin Ltd. ("Forestcoin NZ"), and Tender Software Pty Ltd., ("Tender Software"), (collectively "Plaintiffs") now move this Court to enter default judgment against ForestCoin, Inc., ("FCI") and Christopher Charles Sanders ("Sanders") (collectively, "Defendants"). Plaintiffs respectfully request this court, inter alia, to: (1) issue a permanent injunction restraining and enjoining Defendants from using the FORESTCOIN trademark, as well as any names or marks confusingly similar to Tender Software's FORESTCOIN trademark; (2) order Defendants to remove and/or deliver up for destruction all advertisements, packaging, labels, materials, and other articles bearing the FORESTCOIN mark, as well as any other marks that infringe Tender Software's FORESTCOIN trademark; (3) provide for Tender Software's recovery of $700,000 in statutory damages for its use of counterfeit trademarks; (4) order costs and reasonable attorneys' fees; (5) require Defendants to pay statutory damages for violating the Anti-Cybersquatting Protection Act in the amount of $100,000; (6) require Defendants to transfer the forestcoin.com domain name to Plaintiffs; and (7) award Plaintiffs any other relief as the Court may deem just and proper.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs, Forestcoin SGP and Forestcoin NZ, developed a form of cryptocurrency under the mark "FORESTCOIN."  The cryptocurrency is designed to help reforest the Earth by allowing persons to earn "Forestcoins" by planting trees and providing proof of the plantings to Tender Software.  Dkt. #1 Complaint ("Compl.") at ¶¶ 9-10.  In 2017, Tender Software filed a federal trademark application for FORESTCOIN; it registered on August 27, 2019, under registration number 5,846,266. *Id.* at ¶¶ 12-13.  Plaintiff has since acquired significant common law rights in the FORESTCOIN trademark.

Defendants attempted to register a separate "FORESTCOIN" mark for similar financial services but was refused registration based on Plaintiff's earlier-filed application.  *Id.* at ¶ 15.  At that time, Defendant also owned the domain forestcoin.com but it was inactive.  However, at some point after the USPTO refused registration of FCI's trademark application, the Defendants' forestcoin.com website went live and they announced as much on Facebook. *Id.* at ¶¶ 17-20.  The forestcoin.com website purported to offer and market services such as "crypto currency that is dedicated to raising funds to purchase and preserve Forests Worldwide" which mirrors exactly Plaintiffs' services offered under the FORESTCOIN mark. *Id.* at ¶ 20.

Plaintiffs notified Defendants of Plaintiffs' prior rights in the mark and demanded that Defendants cease such use three times prior to filing this action. *Id*. at ¶¶ 23-24. After additional informal attempts to resolve the matter were unsuccessful, Plaintiffs filed its initial Complaint on March 10, 2021, and properly effected service of the Complaint and related documents on Defendants. Dkt. #1, 16 and 17.  Defendants have refused to cooperate in pre-litigation discussions or litigation by failing any responsive pleading to date or otherwise defend in this action.  As a result, the court entered default against Defendants on June 22, 2021.  Dkt. #20, 22.

## III.    PLAINTIFFS ARE ENTITLED TO DEFAULT JUDGMENT

When appropriate, "District courts must have default judgment readily available within its arsenal of sanctions in order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not." *United States v. Uptergrove*, No. 1:06-CV-1630-AWI-GSA, 2008 U.S. Dist. LEXIS 73489, 2008 WL 3850833, at *21 (E.D. Cal. Aug. 13, 2008); *Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996).  The facts in this case indicate that entry of default judgment is appropriate.

Federal Rule of Civil Procedure 55 establishes a two-step process for entering a default judgment: (1) entry of default, and (2) entry of default judgment.  A party must first file a motion for entry of default, obtain a Clerk's

Order of Default, and then file a separate motion for default judgment. See Fed. R. Civ. P. 55(a)-(b); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (noting "the two-step process required by Rule 55"). "Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint—except those pertaining to damages—are accepted as true." *Nexon Am., Inc. v. Kumar*, No. 11-6991, 2012 U.S. Dist. Lexis 47294, at *6 (C.D. Cal. Apr. 3, 2012); *see also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied.").

Before a court can enter default judgment against a defendant, the plaintiff must also satisfy the procedural requirements set forth in Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

Here, step one of the process is complete, as the Clerk has entered an entry of default against Defendants. Plaintiffs now have no other course to pursue

4

against Defendants except to move for default judgment. Based on the allegations in the well-pled Complaint that establish Defendants' liability, Plaintiffs are therefore entitled to default judgment as fully discussed below.

## IV. DEFAULT JUDGMENT IS PROCEDURALLY PROPER

The decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Hopson v. Singh*, 2019 U.S. Dist. LEXIS 155319, 2019 WL 4298040, at *5 (E.D. Cal. 2019). In making this determination, courts generally consider the following Eitel factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The enumerated factors referenced above weigh in favor of granting default judgment and awarding the requested relief.

### A. Plaintiffs Will Suffer Prejudice Absent a Default Judgment

Plaintiffs have put forth diligent efforts to notice Defendants of the pending litigation. Absent an entry of default judgment, Plaintiffs will be prejudiced because they will have no other recourse to stop Defendants' infringing activities

5

or the resulting harm to its trademarks and inevitable confusion. Furthermore, Defendants failed to respond or appear in the case which prejudices Plaintiffs' ability to pursue its claims on the merits and seek recovery of damages. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Therefore, without an entry of default judgment, the goodwill associated with Plaintiffs' mark will be further compromised. *See Philip Morris USA, Inc. v Castauorrld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery [and] . . . Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered."). Accordingly, this factor favors default judgment against Defendants.

**B. Plaintiffs' Infringement, Unfair Competition, and Cyberpiracy Claims are Meritorious and Sufficiently Pled in the Complaint**

For purposes of evaluating the merits of the claims stated in the complaint, the general rule is that upon default, the factual allegations of the complaint, except those which pertain to damages, will be taken as true by the court. *See* Fed. R. Civ. P. 8(b)(6); *see also, Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 451 (9th Cir. 1991); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

6

1977).   In order to prevail on trademark infringement, unfair competition, and false designation of origin claims under 15 U.S.C. §§ 1114(1), 1125(a), 1125(d) and California's common law, Plaintiffs must prove that they (1) had a legally protectable trademark and (2) Defendants' unauthorized use of that mark is "likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011); *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-3594, 2007 U.S. Dist. Lexis 100237, at *10 (N.D. Cal. Mar. 22, 2007) ("[T]he federal claims [of trademark infringement, unfair competition, and false designation of origin under the Lanham Act], if met with adequate evidence, are also sufficient to establish defendant's liability under the state law claims for unfair competition and trademark infringement") (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).   In this case, Plaintiffs have legitimate claims of trademark infringement, unfair competition, and false designation of origin.

    1. <u>Plaintiffs Own a Legally Protectable Mark, Where Defendants' Use of Which is Likely to Cause Consumer Confusion</u>

Tender Software owns federal U.S. Registration No. 5,846,266 for FORESTCOIN.  Compl. ¶ 13.  Tender Software's federal registration constitutes prima facie evidence of the validity of its legally protectable mark.  *Id.*   In addition to its federal rights, Tender Software also owns common law trademark

rights in the FORESTCOIN trademark in connection to cryptocurrency services. *Id.* at ¶¶ 38-40.

Defendants received actual knowledge of Tender Software's prior rights in the FORESTCOIN mark upon receipt of the USPTO refusal of the application to register FORESTCOIN.  Notwithstanding, Defendants used the mark in commerce without authorization from Plaintiffs, in connection with identical services, which have or will likely cause consumer confusion.  *Id.* at ¶¶ 38-41.

In determining likelihood of confusion, the Ninth Circuit generally considers eight factors: (1) strength of the allegedly infringed mark; (2) proximity or relatedness of the goods and/or services; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) type of the goods and/or services and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the allegedly infringing mark; and (8) likelihood of expansion of product  lines. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors are not exhaustive nor exclusive but are merely intended to guide the court in assessing the basic question of likelihood of confusion.  In weighing the relevant factors, as identified below, a court will likely find a likelihood of confusion.

First, trademark law offers greater protection to marks that are strong. *See Riggs Marketing Inc. v. Mitchell*, 993 F. Supp. 1301, 1305 (D. Nev. 1997). The strength of a mark is determined by its placement on a "continuum of marks from 'generic' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful,' awarded maximum protection. *Id*. The mark "FORESTOIN" is distinctive and highly suggestive, particularly in light of the fact that this word does not otherwise exist in the English language. Accordingly, Tender Software's mark is strong and entitled to protection.

Second, both Plaintiffs and Defendants provide financial services, namely, providing a digital currency or cryptocurrency, with a focus on preserving forests. Thus, the services are identical, and the marketing channels overlap.

Third, the greater the similarity between the marks at issue, the greater the likelihood of confusion. *Fitness Together Franchise Corp. v. C.P. Body Design, Inc.*, 2010 U.S. Dist. LEXIS 163059, 2010 WL 11628010, at *10 (D. Ariz. 2010). The marks at issue here are FORESTCOIN and FORESTCOIN.  The marks are identical.

Fourth, the Defendants learned of Plaintiffs' FORESTCOIN mark, at least, as early as the time the USPTO issued an Office Action for Defendants' trademark application, and prior to the launch of the forestcoin.com website. Compl. at ¶¶ 15-20.  Therefore, as alleged in the Complaint (which is accepted

9

as true), Defendants intentionally, knowingly, deliberately and willfully used the FORESTCOIN mark to violate Plaintiffs' trademark rights.

Therefore, the Court should find Defendants liable for trademark infringement, unfair competition, and false designation of origin in violation of the Lanham Act and California common law. As a result, irreparable injury to Plaintiffs is presumed. *See GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).

### 2. Plaintiffs' Unfair Competition Claims

In order to state a statutory claim for unfair competition under California law, a plaintiff must show that by reason of defendants' unlawful, unfair or fraudulent business acts or practices, it suffered injury in fact and a loss of money or property. CAL. BUS. PROF. CODE § 17200; *See also Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). When a plaintiff alleges facts to show passing off, those facts are sufficient to show a common law unfair competition claim. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997). Here, Plaintiffs have alleged sufficient facts in the Complaint to meet the elements of both claims. Defendants have infringed Plaintiffs' invaluable rights in its FORESTCOIN trademark which have caused ongoing and irreparable harm to Plaintiffs and the goodwill associated with the Plaintiffs' mark. Compl. at ¶¶ 44-57. By using the FORESTCOIN mark without

10

consent or authorization, Defendants gained an unfair business advantage by conferring upon themselves the benefits and goodwill developed by Plaintiffs. *Id.* at ¶¶ 49-51, causing damage and confusion.

### 3. Plaintiffs' Cyberpiracy Claims

A trademark owner asserting a claim under the ACPA must establish that (1) it has a valid trademark entitled to protection, (2) its mark is distinctive or famous, (3) the defendant domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark, and (4) the defendant used, registered, or trafficked in the domain name, (5) with a bad faith intent to profit. *Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005).

Given that the allegations in the complaint are taken as true, Plaintiff has established that Plaintiffs own a valid trademark registration which is entitled to protection which is distinctive or famous. *See Compl.* at ¶¶ 12-13. Defendants also operate the forestcoin.com domain name which is identical or confusingly similar to Plaintiffs' registered trademark. *Id.* at ¶¶ 16-20, 33-36. Furthermore, Defendants had, and continue to have, a bad faith intent to profit from Plaintiffs' FORESTCOIN mark and associated goodwill through its use in the domain. *Id.* at ¶¶ 66-67. Indeed, six of the bad faith factors in 15 U.S.C. § 1125(d)(1)(B)(ii) are present here. (1) Plaintiffs have trademark rights in "FORESTCOIN," the central component of Defendants' "forestcoin.com" domain (Compl. at ¶ 13 and

11

Ex. A); (2) Defendants do not have any legal rights to use the forestcoin.com domain; (3) Defendants were not using the forestcoin.com domain for the year preceding their launch of the domain to cell "FORESTCOIN" cryptocurrency (*Id.* at ¶ 16); (4) Defendants were making commercial use of the domain to sell identical services as those offered by Plaintiffs (*Id.* at ¶ 33); (5) Defendants use of the forestcoin.com domain to sell identical services can only be interpreted as an intent to divert customers from Plaintiffs (*Id.* at ¶ 34); and (6) Defendants used Plaintiffs' distinctive mark in the domain name (*Id.* at ¶ 48).

Because Plaintiffs properly alleged the constituent elements of this cause of action in the complaint, the Complaint is sufficient.  Plaintiffs' meritorious claim and the sufficiency of such weigh in favor of default judgment against Defendants.

### C. Plaintiffs Should not be Denied the Damages They would Recover from Defendants at Trial

The amount of damages Plaintiffs request, discussed in further detail below, is an amount in which Plaintiffs are entitled as the owner of the registered trademark.  Defendants have continued to engage in acts that show willful and intentional infringement of Plaintiffs' marks in utter disregard to Plaintiffs' best efforts to halt such infringement.  Defendants' acts have caused, and will likely continue to cause, irreparable harm to Plaintiffs.  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc*., 736 F.3d 1239, 1249 (9th Cir. 2013) ("Evidence of loss of

control over business reputation and damage to goodwill could constitute irreparable harm."); *Sennheiser Electronic Corp v. Eichler*, No. 12-10809, 2013 U.S. Dist. Lexis 105319, at \*10 (C.D. Cal. 2013) (explaining that continued trademark infringement that otherwise damages "goodwill and business reputation [] will often constitute irreparable injury"). Therefore, Defendants acts and resulting harm warrant entry of default judgment.

### D. There is Little Possibility of a Dispute Concerning Material Facts or Excusable Neglect

Given that Defendants failed to answer the Complaint, there is no dispute concerning the material facts because all allegations of the complaint, except those pertaining to damages, are taken as true. *See Geddes*, 559 F.2d at 560. Further, there is no evidence of excusable neglect in the record. Plaintiffs properly served Defendants with all necessary court documents and, in response, Defendants failed to appear or make any effort to even argue excusable neglect. *See* Dkt. #22. This factor weighs heavily in favor of default judgment.

### E. Although Public Policy Favors a Decision on the Merits, Defendants Make a Decision on the Merits Impossible

Although courts typically prefer to decide cases on the merits whenever possible, Defendants' failure to defend this action by not answering the complaint, or making any appearance, renders a decision on the merits is impossible. *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392-93

13

(CD. Cal. 2005). Accordingly, a court may terminate a case before hearing the merits through entry of default judgment when a defendant failed to defend an action. *Id.* at 392. Entry of default judgment is appropriate in this instance.

## V. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

Pursuant to Section 34 of the Lanham Act, Courts are empowered to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a).

Furthermore, when the relief requested is consistent with the demands in the Complaint, it is appropriate to grant an injunction on an application for default judgment. *Craigslist, Inc. v. RealWorks*, No. 08-5072, 2009 U.S. Dist. Lexis 132432, at *8-9 (N.D. Cal. Oct. 29, 2009); *see also* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Permanent injunctive relief is appropriate when (1) the plaintiff risks suffering irreparable harm; (2) monetary remedies are inadequate to compensate for the plaintiff's injury; (3) the balance of hardships favors the plaintiff; and (4) the public interest would not be disserved by an injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

14

The Court should grant permanent injunctive relief as requested in the Complaint, because all factors strongly favor Plaintiffs.  Plaintiffs fully and adequately pled the grounds for, and their entitlement to, a permanent injunction against the Defendants in the Complaint.  As such, the injunctive relief requested below is substantially identical to the injunctive relief contained in the Complaint's Prayer for Relief.  Compl. at ¶¶ 11-12.  With regard to the equitable factors:  (1) Plaintiffs will lose control over the reputation and goodwill of its trademark, continuing to suffer irreparable harm if the injunction is not granted; (2) injunctive relief is necessary to halt Defendants' continued infringement of Plaintiffs' valuable trademark rights; the requested injunction would only prevent Defendants from engaging in unlawful behavior; Plaintiffs have no other recourse against Defendants if an injunction is not granted; and (5) an injunction would protect against public confusion. *See Philip Morris*, 219 F.R.D. at 502 ("Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm").

Accordingly, Plaintiffs request the following permanent injunction be entered:

A. An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons

15

acting in concert or participating with them (the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

    i.   cease all use and never use the FORESTCOIN mark, or any other names or marks likely to cause confusion with the Plaintiffs' Marks, in connection with financial services, cryptocurrency, or any other related good or service, and including any such use on social media;

    ii.   remove and/or deliver up for destruction all advertisements, packaging, labels, materials, and other articles bearing the FORESTCOIN mark, as well as any other marks that infringe Plaintiffs' FORESTCOIN trademark; and

    iii.   transfer to Plaintiffs, all possession, custody, or control of the forestcoin.com domain name, or any other confusingly similar domain name.

## VI.    PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES FOR TRADEMARK INFRINGEMENT

Pursuant to the Complaint, Defendants are now in default and liable for damages for trademark infringement and unfair competition. Under 15 U.S.C. § 1117(a), a "plaintiff shall be entitled … to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." In cases such as this one, where the infringement constitutes counterfeiting and is willful, such damages should be trebled. 15 U.S.C. § 1117(b).

16

In light of the impossibility of discovery on actual damages, Plaintiffs elect statutory damages, which they may do at any time prior to entry of judgment. 15 U.S.C. § 1117(c). *See Aztec Shops Ltd. v. State St Grill SDSU Inc*., 2014 U.S. Dist. LEXIS 192048, at *13 (S.D. Cal. 2014) ("in a default judgment scenario, statutory damages rather than actual damages are often awarded because the information necessary "to prove actual damages is within the infringers' control and is not disclosed"").

The Lanham Act permits a plaintiff to elect "to recover, instead of actual damages . . . an award of statutory damages" of not less than $1,000 and not more than $200,000 per counterfeit mark offered for sale or distribution, "as the court considers just." 15 U.S.C. § 1117(c). Where the infringement is willful, the Lanham Act provides for enhanced statutory damages up to $2 million per counterfeit mark. Id. § 1117(c)(2). Failure to defend is evidence of willfulness. *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Infringement following actual notice also is evidence of willfulness. *RingCentral, Inc. v. Quimby*, 711 F. Supp. 2d 1048 (N.D. Cal. 2010); *Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978).

In the present case, because Defendants have not appeared to answer the Complaint or engage in discovery, Plaintiffs have no means of knowing how many counterfeit FORESTCOIN tokens may have been issued, or in what ways

17

Defendants have advertised their counterfeit "FORESTCOIN" cryptocurrency service beyond the internet. At a minimum, Defendants' use of the mark on the forestcoin.com website,[1] on three YouTube videos promoting the cryptocurrency, and on Facebook and LinkedIn (screenshots of all these are attached hereto as exhibits to the Declaration of Amanda G. Hyland) indicate widespread use of the mark online. Moreover, in cases such as this one where the Defendants had actual notice of the infringement (here in the form of both the USPTO refusal and three communications from Plaintiffs), higher statutory awards of damages are appropriate.

In light of Defendants' knowledge of Plaintiffs' registered mark, their failure to provide any defense, and their use of that mark broadly across numerous platforms, including Defendants' website, Facebook, LinkedIn, and in the three YouTube videos, Plaintiffs suggest that $100,000 for each of the five social media uses, and $200,000 for use of Defendants' website, for a total of $700,000, would be appropriate, and bearing in mind that Defendants could have made far more significant use of the counterfeit mark on tokens, the calculation of which is impossible in light of Defendants' default. *See Ford Motor Co. v. Cross*, 441

[1] At some point in the last few months, Defendants removed the content from forestcoin.com. Plaintiffs are providing the Court with examples from the WayBack machine to view the content and the domain as it existed when the lawsuit was filed. Moreover, Defendants' counterfeit use of the mark on YouTube, Facebook, and LinkedIn all remain online today.

F. Supp. 2d 837, 852-53 (E.D. Mich. 2006) (awarding the maximum amount of statutory damages available for non-willful infringement (then $100,000) for defendants' willful maintenance of an infringing domain name and operation of an infringing website despite receipt of actual notice that their actions were unauthorized); *PetMed Express v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1221 (S.D. Fla. 2004) (finding defendants' infringing domain names to be counterfeit marks and awarding $400,000 in statutory damages for each domain name based on defendants' willfulness and "the fact that these marks appeared on the Internet, thereby reaching a substantial number of customers").

## VII.  PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES FOR VIOLATING THE ANTI-CYBERSQUATTING PROTECTION ACT

As a result of Defendants' default, they are liable for violating the Anti-Cybersquatting Protection Act. *See Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 109 (C.D. Cal. 2012) ("An award of statutory damages for cyberpiracy is not duplicative of an award for trademark infringement; the two statutes have different elements and serve two different purposes (compensation vs. sanction), so the remedies are not duplicative and can both be awarded.") (citing *St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1204 (11th Cir. 2009)); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) ("A finding of bad faith is an essential prerequisite to finding an ACPA

violation, though it is not required for general trademark liability.") (internal quotation marks omitted).

In this case, Defendants were put on notice of Plaintiffs' trademark rights, at least as early as June 3, 2018, when the USPTO issued an Office Action refusal citing Plaintiffs' prior rights. Compl. at ¶ 15; Ex. B. Thereafter, almost a year after receiving notice from the USPTO, Defendants announced and later launched a forestcoin.com website, thereby willfully infringing upon Plaintiffs' rights. Defendants then continued to use the forestcoin.com domain after three notices from Plaintiffs. Compl. at ¶¶ 23, 25, 27.  The aforementioned allegations were presented in the complaint and are therefore taken as true given the entry of default.

Accordingly, where violations of Section 1125(d)(1) of the Lanham Act provide the plaintiff an opportunity to recover statutory damages, the damages shall be not less than $1,000 and not more than $100,000 per domain name that violates the Section.  See 15 U.S.C. § 1125(d)(1).  Plaintiffs request the Court award the maximum amount for the violations committed by Defendants.

## VIII.    PLAINTIFFS ARE ENTITLED TO ITS COSTS, DAMAGES, AND REASONABLE ATTORNEYS' FEES

Awards of attorneys' fees for Trademark Act violations are appropriate in "exceptional cases" under § 1117(a) and for willful violations under § 1117(b). *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

20

Here, attorneys' fees are appropriate given the willful and bad faith infringement by Defendants. As established above, Defendants had actual notice of Plaintiffs' prior rights at least one year before launching its website which infringed upon Plaintiffs' rights, and they continued to infringe despite numerous warnings from Plaintiffs. Thus, the infringement was willful and justifies an award of attorneys' fees and costs.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter default judgment against Defendants in the form of the attached Proposed Order.

Dated: July 26, 2021                    TAYLOR ENGLISH DUMA LLP

By:    */s/ William B. DeClercq*
       WILLIAM B. DECLERCQ
       AMANDA G. HYLAND
       (admitted *pro hac vice*)

       *Attorneys for Plaintiffs*

21